2017 CO 108

**The PEOPLE of the State of Colorado, Plaintiff-Appellant**

**v.**

**Brandy Frances BALL, Defendant-Appellee**

**Supreme Court Case No. 17SA68**

Supreme Court of Colorado.

December 18, 2017

Attorneys for Plaintiff-Appellant: Daniel H. May, District Attorney, Fourth Judicial District, James McGehee, Deputy District Attorney, Tanya A. Karimi, Deputy District Attorney, Colorado Springs, Colorado.

Attorneys for Defendant-Appellee: The Kohn Law Firm, Molly Hostetler, Shimon Kohn, Colorado Springs, Colorado.

JUSTICE COATS delivered the Opinion of the Court.

¶1 The People filed an interlocutory appeal, as authorized by section 16-12-102(2), C.R.S. (2017), and C.A.R. 4.1, from an order of the district court suppressing statements made by, and contraband seized from, Ball. Although the district court found her initial stop to be supported by reasonable articulable suspicion, it nevertheless found that before she made any inculpatory statements, the seizure of her person had exceeded the permissible scope of an investigatory stop; that she was already under arrest by the time she was interrogated without the benefit of <u>Miranda</u> warnings; and that her subsequent consent to search her purse and car was not voluntary.

¶2 Because the district court either misapprehended or misapplied the controlling legal standards governing investigatory stops, arrests, and custodial interrogations, and because the warrantless searches of the defendant's car and purse were justified on the basis of probable cause and exigent circumstances, without regard for the voluntariness of her consent or compliance with the dictates of section 16-1-301, C.R.S. (2017), the statute governing consensual vehicle searches in this jurisdiction, the district court's suppression order is reversed, and the case is remanded for further proceedings consistent with this opinion.

### I.

¶3 Following the recovery of methamphetamine and drug paraphernalia from the purse and car of Brandy Frances Ball on the evening of October 29, 2016, she was charged with possession of a controlled substance and possession of drug paraphernalia. She moved to suppress her arrest and all evidence and statements acquired as the product of this encounter with the police, as violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments. The district court heard the motion, and with the only witness to testify being the arresting officer and the only exhibit admitted into evidence being the footage from his body camera, the court made findings of fact and conclusions of law and granted the motion to suppress.

¶4 As relevant to our resolution of the People's assignments of error on appeal, the district court either expressly found, or unquestioned evidence from the hearing demonstrated, the following historical facts surrounding the events in question. While patrolling a motel parking lot just after 11 p.m., an officer of the Fountain Police Department heard a man and woman inside a car in the rear parking area loudly arguing with each other. As the car drove away from its parking spot, the officer activated his emergency lights, the subject car pulled into another parking spot and stopped, and the officer parked his squad car behind it.

¶5 The officer approached the passenger side window and told the man who occupied the passenger seat and the defendant, who was driving, that he had heard them arguing. In response to his inquiry what was going on, both responded that they were just arguing. The officer, who had formal training in drug recognition, testified that the passenger was very jittery and appeared to be under the influence of a central nervous system stimulant, and the defendant appeared extremely tired and may have been grinding her teeth. The officer then asked both for identification and took a step back to call dispatch on his body radio, to check for outstanding warrants or protective orders.

¶6 Before receiving any response from dispatch, the officer asked the defendant if he could speak with her and directed her to the rear of the car, where he asked her whether there was anything illegal in the car and, immediately thereafter, when she had last used methamphetamine. Although she initially said it had been a few days, in response to follow-up questions concerning the current possession of contraband by her or the passenger, she conceded that there was methamphetamine, a pipe, and a scale in the car, and she offered to retrieve her purse and show the officer. Despite the officer's response that he simply wanted to know how much of the drug was in the purse, the defendant quickly retrieved it and showed the officer packets of methamphetamine it contained. While awaiting the arrival of a K-9 police unit he had summoned, the officer further asked the defendant for consent to search her car, and an ensuing search revealed drug paraphernalia.

¶7 The district court concluded that the initial encounter, the nature of which as a stop was never disputed, was justified by reasonable suspicion to investigate for domestic violence. It also concluded, however, that within seconds the officer could tell there was no domestic violence and as the result of his continued detention of the defendant to inquire about illegal drugs, without reasonable articulable suspicion that she was currently in possession of illegal drugs, "the detention exceeded the parameters of the investigatory stop." The district court further concluded that the defendant was arrested without probable cause and that she was thereafter interrogated and made incriminating statements without being advised of her Miranda rights. Finally, the district court concluded that the defendant's consent to search her car was not voluntary, relying partly on the fact that the officer had not complied with statutory prerequisites to conducting a consensual search of a vehicle, but largely on the ground that the defendant had reasonably relied to her detriment on a police promise that she would not be prosecuted.

¶8 The People filed an interlocutory appeal challenging the suppression order, as permitted by section 16-12-102(2), C.R.S. (2017), and C.A.R. 4.1.

## II.

¶9 It is now long established that a limited seizure of a person, designated an investigatory stop, is permitted by the Fourth Amendment upon reasonable articulable suspicion, not rising to the level of probable cause, that the person is committing, has committed, or is about to commit a crime. See Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Stone v. People, 174 Colo. 504, 485 P.2d 495, 509 (1971). As the designation chosen for such a limited detention implies, an "investigatory stop" can be justified only for the purpose of confirming or dispelling that articulable suspicion and may be no more intrusive than required to diligently do so. See United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct.

1568, 84 L.Ed.2d 605 (1985); People v. Garcia, 11 P.3d 449, 455 (Colo. 2000). In evaluating whether the scope and character of the detention in question were reasonably related to the investigative purpose to be served by it, the Supreme Court has emphasized that "common sense and ordinary human experience must govern over rigid criteria." Sharpe, 470 U.S. at 685, 105 S.Ct. 1568. Nevertheless, from the variety of scenarios addressed by the Supreme Court, we have found typically relevant, though hardly exhaustive, such considerations as the length of the detention, the extent of and reasons for any movement of the suspect from one location to another, the diligence exercised by the investigating officer in pursuing the investigative purpose that justified the detention, and the availability of less intrusive means of resolving the questions raised by his reasonable suspicion. See People v. Ramos, 13 P.3d 295, 299 (Colo. 2000); see also Garcia, 11 P.3d at 454–55; People v. Rodriguez, 945 P.2d 1351, 1362 (Colo. 1997).

¶10 The scope and character of an investigatory stop are therefore matters to be determined by objective criteria and not merely the subjective intent or focus of the officer executing the stop. Rodriguez, 945 P.2d at 1360–61. Could any doubt have remained, see Arizona v. Johnson, 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009); Muehler v. Mena, 544 U.S. 93, 100–01, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005), we have only recently made clear that an officer's inquiry into matters unrelated to the initial reason for the stop does not, in and of itself, exceed the scope of an otherwise lawful stop. People v. Chavez-Barragan, 2016 CO 66, ¶ 26, 379 P.3d 330, 336–37. While an investigatory stop clearly cannot be measurably extended to inquire into matters of which the investigating officer lacks reasonable suspicion, People v. Cervantes-Arredondo, 17 P.3d 141, 147 (Colo. 2001), the permissible scope of an investigatory stop is not exceeded by making inquiries that do not measurably delay a reasonable investigation into matters as to which reasonable articulable suspicion does exist nor do such inquiries render an investigation less than diligently pursued. See Chavez-Barragan, ¶ 26, 379 P.3d at 336–37.

¶11 By the same token, a lawful detention begun for one particular purpose does not become unlawful by prolonging that detention beyond the time necessary to diligently investigate for that original purpose, as long as the stop does not measurably extend beyond the time necessary to diligently investigate for a purpose as to which reasonable articulable suspicion was acquired during the initial lawful detention. Id. at ¶ 21, 379 P.3d at 336. And if probable cause to actually arrest the detainee arises during a lawful investigatory stop, his continued detention is no longer attributable to an investigatory stop at all. Because a warrant is not required for an arrest outside the home, United States v. Watson, 423 U.S. 411, 423, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), once probable cause to arrest has been acquired in the course of a lawful investigatory stop, further detention of the suspect is justified as a lawful arrest, whether a formal arrest has yet been announced or not. Sibron v. New York, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); People v. Casias, 193 Colo. 66, 563 P.2d 926, 935 (1977); see also People v. Lagrutta, 775 P.2d 576, 581–82 (Colo. 1989).

¶12 That the officer's initial encounter with the defendant in this case went beyond what is permissible as a contact-short-of-a-stop, and therefore constituted an investigatory stop from its very inception, has never been disputed; and the district court expressly found that under these circumstances—which included an argument between a man and woman in a car, parked in a lot behind a motel, at eleven o'clock at night, involving yelling loud enough for the officer to hear from his own car—the initial stop of the defendant was justified by reasonable articulable suspicion of domestic violence, a finding not subject to review by interlocutory appeal. People v. Weston, 869 P.2d 1293, 1297 (Colo. 1994) (where suppression court resolved the question of reasonable articulable suspicion for the stop in favor of the prosecution, that issue could not be reconsidered in an interlocutory appeal pursuant to C.A.R. 4.1). The district court also found, however, that the investigatory stop continued for approximately forty-five minutes, despite the offi-

cer's learning within seconds that no domestic violence had occurred. Either because the court believed that the officer did not subjectively intend to investigate for domestic violence after the first few seconds of the stop, the officer was actually required to release the defendant when he failed to observe signs of domestic violence upon his initial approach, the officer was in any event not permitted to inquire about drugs without reasonable articulable suspicion of a drug offense, or some combination of these things, the district court concluded that the detention exceeded the permissible scope of an investigatory stop.

■ ¶13 Under whatever other misapprehensions of law the district court may have labored, it clearly erred in believing that a stop to investigate for suspicion of domestic violence is limited to the detection of physical violence that is currently occurring or has already occurred, rather than to prevent continued or future acts of domestic violence. From its first articulation of the stop doctrine, the Supreme Court's constitutional justification for such a thing as a Terry stop was the prevention of crime through timely, limited investigation, and along with the detection of crime that had already occurred, which has also come to be recognized as an acceptable purpose for an investigatory stop, see generally 4 Wayne LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 9.2(a) (5th ed. 2017), prevention remains a, if not the, primary justification for sanctioning such a limited detention. See People v. Archuleta, 980 P.2d 509, 516 (Colo. 1999). Especially where there are reasonable grounds to suspect that one domestic partner is either likely or threatening to assault the other, a limited investigation to dispel any such suspicion is clearly within the permissible scope of a Terry stop. Cf. State v. Miller, 207 P.3d 541, 545 (Alaska 2009) (finding reasonable suspicion of domestic violence where couple was involved in verbal dispute and officer testified that in his experience a verbal dispute always precedes a physical one).

■ ¶14 The minimally intrusive investigative methods employed by the officer during the several minutes between the initial contact and the defendant's admission to possessing contraband fell well within the range of techniques associated with diligently pursuing a limited investigatory stop. Prior to the question resulting in the defendant's inculpatory admission, the officer had merely confirmed that the couple was indeed the source of the loud yelling he heard from his police car, checked their identification, called dispatch to check for outstanding warrants or protection orders, and separated the defendant from the male passenger by asking her to step to the rear of the car. Asking a detainee to identify herself and explain what she is doing is clearly not beyond the scope of an investigatory stop. Terry, 392 U.S. at 28, 88 S.Ct. 1868; see also Muehler, 544 U.S. at 101, 125 S.Ct. 1465 (questioning and asking to examine individual's identification do not even constitute a seizure). Similarly, the minimal delay required for a computer search for outstanding warrants or other proscriptive order barring a detainee's suspicious conduct has been universally sanctioned, in a host of different settings. See, e.g., Chavez-Barragan, ¶ 20, 379 P.3d at 336 (noting that during a traffic stop, an officer may check for outstanding warrants so long as this does not unreasonably extend duration of temporary detention); People v. Brant, 252 P.3d 459, 463–64 (Colo. 2011) (finding valid traffic stop where defendant detained for purpose of running clearance check that driver's license had not been revoked); United States v. Burleson, 657 F.3d 1040, 1047 (10th Cir. 2011) ("(T)he same rationale that underlies our conclusion as to the permissibility of warrant checks in the motorist context applies with equal force in the pedestrian context."). Whether or not even this kind of minimal delay might be considered to exceed the scope of a permissible stop under some conceivable circumstance, it would clearly be unreasonable, if not derelict, under the circumstances of this case for an investigating officer not to ensure by brief computer check that one of the parties was not barred from all contact with the other.

■ ¶15 By the same token, separating two suspects in order to question each outside the presence of the other was both minimally intrusive and necessary to ensure that each detainee could speak without influ-

encing or being influenced by the other. Where the investigating officer has reason to suspect that one of the detainees may be dominating or threatening the other, as is the case with the suspicion of domestic violence, this is clearly a reasonable investigative technique. Beyond separating the defendant and the male passenger, however, the officer did nothing more to infringe on the defendant's liberty or suggest that she would not be released after a brief detention. See People v. Polander, 41 P.3d 698, 705 (Colo. 2001). The officer did not restrain her with handcuffs or otherwise, see People v. Breidenbach, 875 P.2d 879, 886 (Colo. 1994), threaten her verbally or with a show of force, id., or remove her to his patrol car or otherwise isolate her in any manner implicating the prophylactic warnings of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), protecting against the inherent pressures of custodial interrogation. See Berkemer v. McCarty, 468 U.S. 420, 441–42, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); Breidenbach, 875 P.2d at 885–86.

¶16 At the point in time at which the defendant implicated herself in the possession of contraband, she was therefore being lawfully detained pursuant to an investigatory stop based on reasonable articulable suspicion of domestic violence, and her liberty had not been infringed upon to an extent requiring the administration and waiver of Miranda rights prior to any interrogation. The defendant's admission that she was in possession of contraband provided probable cause to believe she was committing a crime, see Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), and her further detention was therefore not subject to the limitations of an investigatory stop but was justified, rather, as an arrest. More importantly, for purposes of the admissibility of the contraband itself, by admitting that methamphetamine and drug paraphernalia were presently located in her car, the defendant provided grounds for a search, without first securing a warrant.

¶17 A search of both the defendant's purse and car was thereafter constitutionally permissible based on probable cause and exigent circumstances, pursuant to the so-called automobile exception to the Fourth Amendment warrant requirement. Were there any doubt that the search of a readily mobile vehicle falls within the broader exigent circumstances exception to the warrant requirement, without any additional demonstration that the vehicle would likely be moved before a warrant could be had, that doubt has clearly been dispelled by the Supreme Court. Maryland v. Dyson, 527 U.S. 465, 466–67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (noting that established Supreme Court precedent makes clear that the "automobile exception" has no separate exigency requirement); see also People v. Zuniga, 2016 CO 52, ¶14, 372 P.3d 1052, 1056. Any question concerning the applicability of the automobile exception to the search of containers, like a purse, located within a readily mobile vehicle has similarly been dispelled by the Supreme Court. See California v. Acevedo, 500 U.S. 565, 574, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). And to the extent the automobile exception permits the search of a container while it is located within an automobile, without the need to first acquire a search warrant, that exception permits a search of the container without a warrant, even after the container has been removed from the automobile. United States v. Johns, 469 U.S. 478, 486, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985) (explaining that a warrantless search of packages was not unreasonable merely because the officers removed the packages from the vehicle and placed them in a DEA warehouse rather than immediately opening them).

¶18 Without regard for any failure of the police to comply with the requirements of section 16-3-301 and without regard for the constitutional voluntariness of the defendant's subsequent consent to search, the warrantless search of the defendant's purse and car, and the resulting discovery of methamphetamine and drug paraphernalia, were justified by the combination of probable cause and the automobile exception to the warrant requirement. Because the defendant was never illegally detained, neither the contraband discovered in this search nor the defendant's admission providing probable cause could have been the product of an illegal stop or detention. Similarly, because the defen-

dant's liberty had not been infringed upon to an extent commensurate with a formal arrest prior to her admission, her statement providing probable cause for the warrantless search was not the product of custodial interrogation in violation of <u>Miranda</u>.

¶19 While the district court's erroneous conclusions concerning the defendant's stop and arrest made it unnecessary for that court to address the prosecutor's claim of admissibility pursuant to the automobile exception, the constitutionality of the discovery of the contraband found in the defendant's purse and car follows as a matter of law from the court's findings and the undisputed testimony. And while the district court simply granted the defendant's motion to suppress her arrest and all statements and evidence acquired as the result of the encounter, without specifying the particular statements or evidence it was suppressing, no other inculpatory statements or evidence appear from the record before this court. Whatever the district court may have intended by granting the defendant's motion to suppress her arrest, it is at least clear that neither the person of the defendant nor the fact of her arrest is subject to suppression pursuant to the Fourth Amendment exclusionary rule, even where a constitutional violation has occurred. See, e.g., <u>United States v. Crews</u>, 445 U.S. 463, 474, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980) (explaining that the defendant "is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct.").

### III.

¶20 Because the district court either misapprehended or misapplied the controlling legal standards governing investigatory stops, arrests, and custodial interrogations, and because the warrantless searches of the defendant's car and purse were justified on the basis of probable cause and exigent circumstances, without regard for the voluntariness of her consent or compliance with the dictates of section 16-1-301, the statute governing consensual vehicle searches in this jurisdiction, the district court's suppression order is reversed, and the case is remanded for further proceedings consistent with this opinion.