Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
March 2, 2020

**2020 CO 16**

**No. 19SA226, *People v. Ashford*—Fourth Amendment—Scope of Investigatory Stops.**

After a police officer felt a pill bottle in the defendant's jacket during the course of an investigatory stop, the officer asked the defendant, "I know this is a pill bottle, what is it?"  In response, the defendant removed a pill bottle from his pocket and showed it to the officer, who could see that it contained baggies of illegal drugs.  In this case, the supreme court considers whether that question exceeded the scope of the investigatory stop.  Because the supreme court concludes that the officer's question did not measurably extend the stop of the defendant, it holds that the question about the pill bottle did not exceed the scope of the investigatory stop.  Thus, it reverses the district court's suppression order.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 16

### Supreme Court Case No. 19SA226
*Interlocutory Appeal from the District Court*
El Paso County District Court Case No. 19CR684
Honorable Gregory R. Werner, Judge

_____

### Plaintiff-Appellant:

The People of the State of Colorado,

v.

### Defendant-Appellee:

Tony Lee Ashford.

_____

### Order Reversed
*en banc*
March 2, 2020

_____

**Attorneys for Plaintiff-Appellant:**
Daniel H. May, District Attorney, Fourth Judicial District
Andrew Lower, Deputy District Attorney
Doyle Baker, Senior Deputy District Attorney
*Colorado Springs, Colorado*

**Attorney for Defendant-Appellee:**
Jennifer Charlier Cox, Deputy Public Defender
*Colorado Springs, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.

¶1     While searching Tony Ashford for weapons in the course of an investigatory stop, a police officer felt a pill bottle in Ashford's pocket and asked him, "I know this is a pill bottle, what is it?" Ashford then took the bottle out of his pocket, and the officer could see that it contained baggies of methamphetamine. Ashford was arrested, and after a more thorough search, he was charged with several drug-related offenses, as well as six habitual offender counts.

¶2     Ashford moved to suppress all evidence obtained as a result of the stop. The district court granted Ashford's motion, finding that the officer's question about the pill bottle exceeded the scope of the stop. The People filed this timely interlocutory appeal.

¶3     Because we conclude that the officer's question did not measurably extend the stop of Ashford, we hold that the question about the pill bottle did not exceed the scope of the investigatory stop. Thus, we reverse the district court's suppression order and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶4     A man told police officers on patrol that he had just argued with Ashford and Ashford's girlfriend, and that he was concerned Ashford was going to "lay hands" on his girlfriend. He further informed the officers that Ashford regularly sold methamphetamine.

2

¶5    Shortly thereafter, another officer located Ashford and his girlfriend and asked them to stop so that he could speak with them about the domestic abuse allegations. Ashford appeared nervous. The officer patted Ashford down for weapons and felt a pill bottle in Ashford's jacket pocket. The officer asked Ashford, "I know this is a pill bottle, what is it?" In response, Ashford removed a pill bottle from his pocket and showed it to the officer, who could see that it contained baggies of methamphetamine. The officer then arrested Ashford and conducted a more thorough search of him, during which he discovered $233 in small-denomination bills and unused baggies.

¶6    The People charged Ashford with one count each of possession with intent to manufacture or distribute a controlled substance, possession of a controlled substance, and possession of drug paraphernalia, as well as six habitual offender counts.

¶7    Ashford moved to suppress all the evidence obtained as a result of this stop, and the district court held a hearing. The district court first concluded that the initial stop of Ashford was supported by reasonable suspicion that Ashford might be a threat to his girlfriend's safety; the court further found that the officer had legitimate safety concerns justifying the pat-down for weapons. However, the district court then concluded that the officer "exceeded the reasonable scope of the suspicion that [he] had for the initial contact" when he asked Ashford about the

pill bottle because the officer knew that the bottle was not a weapon. The district court then granted Ashford's motion to suppress, finding that the officer "had no constitutional basis to ask [Ashford] to empty out his pockets, to ask what the pill bottle is, or anything like that." As a result, the court suppressed all of the evidence seized.

¶8      In response, the People filed this interlocutory appeal.[1]

## II.  Standard of Review

¶9      A district court's ruling on a motion to suppress evidence is a "mixed question of law and fact." *People v. Allen*, 2019 CO 88, ¶ 13, 450 P.3d 724, 728 (quoting *People v. Threlkel*, 2019 CO 18, ¶ 15, 438 P.3d 722, 727). When reviewing such an order, we defer to the district court's factual findings so long as they are supported by sufficient evidence in the record. *Id.* But we review the district court's conclusions of law de novo. *Id.*

## III.  Analysis

¶10     We begin by laying out the controlling authority for investigatory stops. We next apply that law to the facts and conclude that the officer's question about the

---

[1] The People have certified that this appeal was not taken for the purposes of delay and that the pill bottle and all related evidence are a substantial part of the proof of all charges against Ashford, as required by section 16-12-102(2), C.R.S. (2019), and C.A.R. 4.1(a).

pill bottle did not measurably extend the stop of Ashford, meaning it did not exceed the scope of the investigatory stop.

## A. Law

¶11 Both the U.S. and Colorado Constitutions protect against "unreasonable searches and seizures." U.S. Const. amend. IV; Colo. Const. art. II, § 7. Typically, searches and seizures must be supported by probable cause to be reasonable. U.S. Const. amend. IV; Colo. Const. art. II, § 7. However, in certain circumstances, a police officer's stop of an individual may be reasonable despite the lack of probable cause. *See Terry v. Ohio*, 392 U.S. 1, 20–21 (1968). One of those circumstances is an investigatory stop, where an officer can briefly stop an individual if the officer is "operating with a reasonable suspicion of criminal activity." *People v. Ingram*, 984 P.2d 597, 603 (Colo. 1999). Within an investigatory stop, an officer is further permitted to conduct a search for weapons if the search is "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Terry*, 392 U.S. at 25–27.

¶12 An investigatory stop complies with the Fourth Amendment if it satisfies three criteria:

> (1) [T]he [investigating] officer [has] "an articulable and specific basis in fact for suspecting (i.e., a reasonable suspicion) that criminal activity has taken place, is in progress, or is about to occur"; (2) the intrusion's purpose [is] reasonable; and (3) the character and scope of the intrusion [are] "reasonably related to its purpose."

*People v. Reyes-Valenzuela*, 2017 CO 31, ¶ 11, 392 P.3d 520, 522–23 (quoting *People v. Salazar*, 964 P.2d 502, 505 (Colo. 1998)).

¶13 Under the third criterion, "a shift in investigatory purpose is not improper when the underlying detention remains lawful." *People v. Chavez-Barragan*, 2016 CO 66, ¶ 26, 379 P.3d 330, 336 (citing *Muehler v. Mena*, 544 U.S. 93, 100–01 (2005), and *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). Moreover, "off-topic questioning is permissible as long as it does not 'measurably extend' the stop." *Id.*, 379 P.3d at 337 (quoting *Johnson*, 555 U.S. at 333). In other words, "the permissible scope of an investigatory stop is not exceeded by making inquiries that do not measurably delay" the investigatory stop, so long as those inquiries do not extend beyond "the time necessary to diligently investigate for [the stop's] original purpose." *People v. Ball*, 2017 CO 108, ¶¶ 10–11, 407 P.3d 580, 584.

¶14 We applied this law in *Ball*. In that case, an officer approached a car based on reasonable suspicion that an argument between the car's occupants would escalate to domestic violence. *Id.* at ¶¶ 4, 7, 407 P.3d at 583. Because the officer recognized symptoms of drug use, he asked one of the car's occupants if he could speak to her; she consented, and when she left the car, the officer asked her "whether there was anything illegal in the car and . . . when she had last used methamphetamine." *Id.* at ¶ 6, 407 P.3d at 583. At that point, the woman offered to show the officer the methamphetamine, pipe, and scale that were in the car. *Id.*

6

The district court concluded that the initial stop was permissible because it "was justified by reasonable suspicion to investigate for domestic violence." *Id.* at ¶ 7, 407 P.3d at 583. However, it ruled that the officer "exceeded the parameters of the investigatory stop" once he realized that no acts of domestic violence were occurring but nevertheless continued to ask about drugs. *Id.* We reversed because, as relevant here, the officer used "minimally intrusive investigative methods" that "fell well within the range of techniques associated with diligently pursuing a limited investigatory stop." *Id.* at ¶ 14, 407 P.3d at 585. Thus, the officer's question about what was in the car and when the defendant had last used methamphetamine did not measurably extend the stop. *See id.* at ¶¶ 10–14, 407 P.3d at 584–85.

¶15 With these principles in mind, we now turn to the facts of Ashford's case.

## B. Application

¶16 The district court here effectively concluded that the officer's stop of Ashford satisfied the first two requisite criteria for a valid investigatory stop because (1) the initial stop was supported by reasonable suspicion that Ashford might be a threat to his girlfriend's safety;[2] and (2) the officer had legitimate safety

---

[2] Ashford asks us to review whether the stop was supported by reasonable suspicion. However, the scope of our review is limited to the district court's

concerns justifying the search for weapons, rendering the initial pat-down reasonable. Thus, the issue is whether the third criterion—that the character and scope of the intrusion were reasonably related to the stop's purpose—was satisfied. We conclude that it was.

¶17 The facts of this case are comparable to those in *Ball*. As in that case, the district court found that the officer here had reasonable suspicion to investigate Ashford for domestic violence. During his brief search of Ashford for weapons, the officer felt what he thought was a pill bottle and asked Ashford one short question about it. This led to Ashford producing the pill bottle without any request to do so by the officer. While the question was off-topic, we have explicitly stated that off-topic questioning is permissible so long as it does not measurably extend the investigatory stop. *See Chavez-Barragan*, ¶ 26, 379 P.3d at 337. The officer asked a single question, which took mere seconds. Hence, like in *Ball*, the question asked here was minimally intrusive and did not measurably extend the investigatory stop.

¶18 Thus, we hold that the question about the pill bottle did not exceed the scope of the investigatory stop.

---

reasoning supporting the suppression order under C.A.R. 4.1. *See Ball*, ¶ 12, 407 P.3d at 584 (citing *People v. Weston*, 869 P.2d 1293, 1297 (Colo. 1994)).

## IV. Conclusion

¶19   For the foregoing reasons, we reverse the district court's suppression order and remand for further proceedings consistent with this opinion.