23CA1928 Peo in Interest of APR 04-16-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1928
Weld County District Court No. 22JD52
Honorable Marcelo A. Kopcow, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of A.P.R.,

Juvenile-Appellant.

JUDGMENT AND ORDER AFFIRMED

Division III
Opinion by JUDGE DUNN
Harris and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 16, 2026

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant
Attorney General and Assistant Solicitor General, Denver, Colorado, for
Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Casey Mark Klekas, Deputy
State Public Defender, Denver, Colorado, for Juvenile-Appellant

¶ 1     A.P.R. appeals his adjudication of delinquency for sexual assault.  He argues that we must reverse his adjudication because depriving a juvenile charged with a felony of the right to a jury trial is unconstitutional under the federal and state constitutions.  He alternatively argues that the district court abused its discretion by denying his request for a jury trial and erred by denying his motion to suppress a pretextual conversation.  And, finally, he contends that we must vacate the restitution order.  We affirm.

## I.     Background

¶ 2     After the victim reported to her father that A.P.R., then a juvenile, sexually assaulted her at school, her father contacted the police.  The victim met with the investigating officer and agreed to engage in a pretextual conversation with A.P.R.  With the officer's help, the victim texted A.P.R. to talk about "what happened."  During the conversation, the victim asserted that A.P.R. had raped her and that she had told him "no a million times before [he] even touched [her]."  A.P.R. responded, "I realize that n I'm sorry . . . I didn't mean to do that to u."  He later added, "I really am sorry I shouldn't have done that to u."

¶ 3     At the investigating officer's request, A.P.R. agreed to an interview. A.P.R. admitted that he and the victim — who he had recently dated — had sex at school but said the sex was consensual. When confronted with the text messages, A.P.R. explained that he apologized in the text messages because the victim regretted having sex.

¶ 4     The prosecution filed a petition in delinquency charging A.P.R. with one count of sexual assault. The district court denied A.P.R.'s request for a jury trial and his motion to suppress the text messages.

¶ 5     After a bench trial, the court found A.P.R. guilty and adjudicated him delinquent. The court sentenced A.P.R. to two years of probation and later imposed restitution.

## II.     Right to Jury Trial

¶ 6     Though A.P.R. recognizes that the Colorado Supreme Court has ruled that a juvenile does not have a state or federal constitutional right to a jury trial, *see A.C. v. People*, 16 P.3d 240, 241, 243, 245 (Colo. 2001), he argues at some length that we should reach a different conclusion largely based on out-of-state authority, *see In re L.M.*, 186 P.3d 164, 169-70 (Kan. 2008).

¶ 7     But *A.C.* is still good law and is thus binding on us.  *See*
*People v. Porter*, 2015 CO 34, ¶ 23.  Because we are not at liberty to
overrule the Colorado Supreme Court, we assume A.P.R. is simply
preserving his ability to ask the Colorado Supreme Court to revisit
and overrule *A.C.*[1]  *See People v. Novotny*, 2014 CO 18, ¶ 26 (The
supreme court "alone can overrule [its] prior precedents concerning
matters of state law.").

¶ 8     We therefore conclude that the district court was not required
to grant A.P.R.'s request for a jury trial.

### III.    Discretionary Grant of Jury Trial

¶ 9     A.P.R. alternatively argues that the district court abused its
discretion by denying his request for a jury trial.  We disagree.

### A.    Applicable Law and Standard of Review

¶ 10    A juvenile has a statutory right to a jury trial in two
circumstances — when charged as an aggravated juvenile offender
or with a crime of violence.  *See* § 19-2.5-610(1), C.R.S. 2025; *A.C.*,

---

[1] A.P.R. also argues that "depriving juveniles charged with felonies
of the right to jury trial violates Colorado statutes and rules of
procedure."  We do not address arguments that are presented in a
"cursory . . . and undeveloped manner."  *People v. Gingles*, 2014
COA 163, ¶ 29.

16 P.3d at 242-43. When — as here — a juvenile has been charged with a felony that does not fall within those two circumstances, the court "has discretion to grant a jury trial." *A.C.*, 16 P.3d at 243. This discretion allows the court to "balance the benefits of informal, speedy and rehabilitative proceedings against the severity of the offense, the nature of the consequences and the particular facts of the case." *Id.* at 244.

¶ 11    We review a district court's denial of a juvenile's request for a jury trial for an abuse of discretion, which occurs only when the court's decision was manifestly arbitrary, unreasonable, or unfair. *People in Interest of A.B.-B.*, 215 P.3d 1205, 1209 (Colo. App. 2009).

                    B.    The Court Properly Exercised Its Discretion

¶ 12    The district court denied A.P.R.'s request for a jury trial, concluding that a jury trial "would not be necessary or appropriate in this case," considering "the purpose of the juvenile code, and the individual facts and circumstances." A.P.R. says this was reversible error because, in his view, the "particular facts of the case," the "severity of [the] felony offense[,] and the potential consequences of a finding of guilt" outweighed the "benefits of informal, speedy[,] and rehabilitative proceedings."

4

¶ 13    But we disagree that the court abused its discretion. The case involved a single felony count. The facts were simple and centered on whether the victim consented to sex or not. There were few witnesses, and the trial was short. And while the consequences of a sexual assault adjudication are serious, the same is generally true of any felony. Yet the General Assembly mandated jury trials for only two types of felonies.[2] *See id.* at 1210 (upholding denial of request for a jury trial in a sexual assault on a child case when the case "was not a factually complex case" and the number of witnesses was limited).

¶ 14    Because the district court considered the appropriate factors — albeit briefly — we cannot say it abused its discretion even if we might have reached a different result. *See People in Interest of T.B.*, 2016 COA 151M, ¶ 60, *aff'd*, 2019 CO 53.

¶ 15    To the extent A.P.R. argues that the court was required to grant a jury trial because the judge made pretrial rulings and purportedly formed unfavorable credibility opinions, we disagree.

---

[2] While A.P.R. was concerned about sex offender registration, the court held that "registration for this crime when [A.P.R.] was a juvenile, would not be appropriate."

The court's rulings and knowledge of the case are insufficient to establish bias. *People in Interest of S.G.*, 91 P.3d 443, 448 (Colo. App. 2004) ("Unfavorable rulings and a court's alleged personal opinion formed from the judicial proceeding are insufficient to establish bias."); *see also People v. Roehrs*, 2019 COA 31, ¶ 21 (discussing the scope of the extrajudicial source doctrine). And A.P.R. points to nothing in the record to suggest that the court prejudged the case or that A.P.R. did not receive a fair trial.

¶ 16 We therefore conclude that the court did not abuse its discretion by denying the request for a jury trial.

### IV. Motion to Suppress

¶ 17 Before trial, A.P.R. moved to suppress the text messages between himself and the victim in which he acknowledged her rape accusation and apologized to her several times. The motion argued that the text messages should be suppressed because they were a product of custodial interrogation, and, even if not in custody, his statements were involuntary.

¶ 18 After a hearing, the court denied the motion, finding the text messages were not the product of a custodial interrogation and were voluntary.

6

¶ 19    A.P.R. says this was reversible error.  While he doesn't appear to challenge the court's ruling that he wasn't in custody during the text exchange, he argues that the court should've suppressed the text conversation because it was coerced through the victim and elicited through outrageous governmental conduct.[3]

## A.    Standard of Review

¶ 20    The district court's denial of a motion to suppress presents a mixed question of fact and law.  *People v. Ashford*, 2020 CO 16, ¶ 9. We defer to the court's factual findings if they are supported by competent evidence, but we review the legal effect of those findings de novo.  *Id.*  "[T]he ultimate determination of whether a statement is voluntary is a legal question and is reviewed de novo."  *Effland v. People*, 240 P.3d 868, 878 (Colo. 2010).

## B.    The Text Conversation Was Voluntary

¶ 21    Even if a defendant is not in custody, statements that are involuntary or coerced are inadmissible.  *People v. Medina*, 25 P.3d 1216, 1221-22 (Colo. 2001).  A statement is involuntary only if

---

[3] To the extent that A.P.R. argues that the police violated his reasonable expectation of privacy by directing the text conversation, he doesn't develop that argument, and we will not address it.  *See Gingles*, ¶ 29.

"coercive governmental conduct played a significant role in inducing the statement." *Effland*, 240 P.3d at 877. The voluntariness inquiry focuses on the conduct of law enforcement and whether that conduct was of such nature as to overbear the defendant's will. *Id.*

¶ 22    To determine whether police behavior was coercive, the court considers the following nonexhaustive list of factors:

- whether the defendant was in custody;

- whether the defendant was free to leave;

- whether the defendant was aware of the situation;

- whether the defendant had an opportunity to confer with counsel or anyone else prior to or during the interrogation;

- whether the statement was made during the interrogation or volunteered later;

- the method or style of the interrogation;

- the defendant's mental and physical condition just prior to the interrogation;

- the length of the interrogation; and

- the location of the interrogation.

*People in Interest of Z.T.T.*, 2017 CO 48, ¶ 13.

¶ 23    The record here does not indicate governmental coercion. To be sure, though A.P.R. wasn't in custody, he also wasn't aware that the police were involved in directing the text conversation between himself and the victim. But he was very much aware of the rape allegation. And he was free to choose whether to acknowledge or respond to the victim's text messages. That is, he wasn't forced to respond, let alone apologize to the victim. *See People v. Nkongolo*, 2025 CO 20, ¶ 27. And A.P.R. had control over the duration of the conversation and could have stopped responding at any point. *See id.* Beyond that, nothing in the record suggests that A.P.R. was in emotional or physical distress, the text messages contain no threats or promises, and it "isn't inherently coercive for police officers to use an agent" to attempt to get information from a suspect. *Id.* at ¶ 24 (citing *Illinois v. Perkins*, 496 U.S. 292, 297 (1990)); *see also People v. Zamora*, 940 P.2d 939, 942 (Colo. App. 1996) ("[T]he limited use of ruses is supported by the overwhelming weight of authority.").

¶ 24    While A.P.R. says that "[h]ad police questioned him *without* deception, he'd be entitled to his parents['] presence and a lawyer,"

that's not accurate. A juvenile has the right to have a parent present during a *custodial* interrogation. § 19-2.5-203(1), C.R.S. 2025. But the text exchange was not a custodial interrogation.

¶ 25   We also disagree with A.P.R.'s assertion that the police involvement with the text conversation constituted outrageous governmental conduct, which is "conduct that violates fundamental fairness and is shocking to the universal sense of justice." *People v. Medina*, 51 P.3d 1006, 1011 (Colo. App. 2001), *aff'd sub nom.*, *Mata-Medina v. People*, 71 P.3d 973 (Colo. 2003). While the police worked with the victim to direct the text conversation, A.P.R. was free to respond or ignore the text messages. And A.P.R. doesn't explain how police involvement violated fundamental fairness or shocked the universal sense of justice. *See People v. Burlingame*, 2019 COA 17, ¶ 12 ("Instances where trial courts have found outrageous government conduct in Colorado are vanishingly rare, and the threshold for such a finding appears to be exceedingly high.").

¶ 26   Finally, we decline A.P.R.'s request to abandon the totality of the circumstances voluntariness inquiry and craft a new rule in juvenile cases that prohibits police from using pretextual

10

communications "without the child's awareness and parent's presence." We are aware of no authority — and A.P.R. directs us to none — to suggest that the multifactor voluntariness inquiry should be different depending on the age of the defendant. *See Nkongolo*, ¶¶ 23-31 (examining coercion "from the suspect's perspective" based on the totality of the circumstances).

## V.    Restitution

¶ 27    Finally, A.P.R. asks us to vacate the restitution order because (1) the court did not enter a valid restitution order at sentencing; (2) the prosecution presented insufficient evidence to prove the amount of restitution owed; and (3) the court imposed restitution without supporting documentation or disclosure. We affirm the restitution order.

### A.    Additional Background

¶ 28    At the sentencing hearing, the prosecutor stated that "there [wa]s some crime victims compensation for some of the medical bills that the victim received," and while "a crime victim's application" had been received, the prosecution did not "have the information" about "how much was paid out." The prosecution requested "to

reserve [restitution] for 45 days so [it] c[ould] file that notice with the [c]ourt."

¶ 29    A.P.R. objected under *People v. Weeks*, 2021 CO 75, arguing that restitution must be entered at the time of sentencing unless there was good cause shown and that the defense had not been "provided any information in discovery about the content or amount of any crime victim compensation record."

¶ 30    The court ruled,

> As it relates to restitution, the [p]rosecutor is indicating that they have not received an award letter yet from Crime Victim Compensation, but that they see that an application was filed. I'm going to give the [p]rosecution 30 days from today's date to file that Notice of Restitution. I'm finding pursuant to 18-1.3[-]603[,C.R.S. 2023,] based on the representation of [the prosecutor] that restitution may be requested. The specific amount of restitution for the benefit of the Crime Victim Compensation Fund has not yet been determined. They have not received an award letter. You may want to relay to them that you have 30 days to do that. It may be that there's future treatment that's going to be requested. If so, that needs to be made within 30 days pursuant to 18-1.3[-]603[, C.R.S. 2023,] for future restitution payments for treatment.
>
> If I get a Notice of Restitution within 30 days, I'll give the [d]efense an opportunity to file an

12

objection pursuant to *People v. Weeks* as cited by [defense counsel].  We'll have a hearing within 91 days of today's date unless good cause exists.  But today the [c]ourt also is finding that there is good cause and extenuating circumstances to allow the [p]rosecutor to have 30 days to file a Notice of Restitution since her file does not reflect any awards that were made by Crime Victim Compensation, which is a different body than the District Attorney's Office.

¶ 31    The mittimus entered the day of sentencing stated, "[R]estitution [is] reserved for 30 days, [and the] court finds ongoing restitution under crime victim compensation fund."[4]

¶ 32    Less than a week after the sentencing hearing, the prosecution filed a notice of restitution, requesting $4,851 for the crime victim compensation fund.  A.P.R. objected to the requested restitution, again arguing it should have been presented at sentencing.

¶ 33    At the restitution hearing, the director of victims' services and manager of the district attorney's crime victim compensation program testified that the program paid $4,851 for the victim's

---

[4] The summary of the sentencing hearing in the register of actions stated, "[R]estitution reserved for 30 days, makes findings pursuant to [section] 18-1.3-603, [C.R.S. 2023,] to allow defense finds good cause to address restitution after sentencing."

medical expenses.[5]  The program manager explained that the "details of the claim" are confidential but that she reviewed the claim, that it was for medical expenses paid directly to providers, and she described what the program reviewed to determine that the expenses were proximately caused by A.P.R.'s conduct.

¶ 34    It was also established during the hearing that the prosecution had the payment information before the sentencing hearing and that it had been provided in discovery to defense counsel.

¶ 35    A.P.R. asked the court to deny restitution because it was untimely under *Weeks* and because without the confidential victim compensation records, he had no meaningful opportunity to test proximate cause.

¶ 36    The court imposed the requested restitution.  It found that the prosecution proved through the manager's testimony that "there were medical expenses that were directly and proximately caused"

---

[5] At the restitution hearing, the prosecution admitted an exhibit through this witness.  That exhibit, however, is not part of the appellate record.  "It is the appellant's responsibility to designate the record on appeal, including those parts of the trial proceedings that are necessary for purposes of the appeal, and to ensure that the record is properly transmitted to an appellate court." *People v. Duran*, 2015 COA 141, ¶ 12.  We presume that material portions omitted from the record would support the order.  *See id.*

by A.P.R.  Because the restitution order was entered "well within" the statutory deadline, the court found that it was timely under *Weeks*.[6]

### B.    Applicable Law and Standard of Review

¶ 37    If a juvenile who is adjudicated delinquent has caused personal injury to a victim, the court shall require the juvenile to make restitution per the restitution statute.  § 19-2.5-1104(1), C.R.S. 2025.  The restitution statute provides that "[e]very order of conviction of a felony . . . [or] misdemeanor . . . shall include consideration of restitution."  § 18-1.3-603(1), C.R.S. 2023.[7]

¶ 38    The restitution statute then identifies "four options — and only four options — related to the types of restitution orders [district] courts may enter."  *Weeks*, ¶ 3.  One of these options — relevant here — is an "order that the defendant is obligated to pay restitution, but that the specific amount of restitution shall be

---

[6] Restitution was imposed fifty-three days after the court sentenced A.P.R.

[7] Though the restitution statute, including the statutory deadline to enter restitution, has since been amended, *see* Ch. 307, sec. 1, § 18-1.3-603(1), (1)(b), 2025 Colo. Sess. Laws 1606, we cite — throughout this opinion — the statute in effect at the time of A.P.R.'s sentencing.

determined within the ninety-one days immediately following the order of conviction, unless good cause is shown for extending the time period by which the restitution amount shall be determined." § 18-1.3-603(1)(b).

¶ 39    Thus, while a court may not reserve the issue of restitution in its entirety at sentencing, an order under subsection (1)(b) permits "a finding of restitution liability at sentencing and postponement of the determination of the amount of restitution until after sentencing." *Snow v. People*, 2025 CO 32, ¶ 28.  And the liability finding may be "implicit." *Id.* at ¶ 29; *see also Weeks*, ¶¶ 11, 16 (recognizing an implicit finding of restitution liability when, among other things, the prosecution informed the court at sentencing that it would be seeking restitution but hadn't yet filed the motion).

¶ 40    A sentence that does not adhere to the requirements of section 18-1.3-603(1) constitutes an illegal sentence and must be corrected. *Snow*, ¶¶ 2-5.

¶ 41    We review the legality of a sentence de novo.  *Tennyson v. People*, 2025 CO 31, ¶ 23.

## C.   The Restitution Order Is Valid

¶ 42    A.P.R. does not dispute that the restitution order was entered within the statutory deadline, thus he no longer maintains that the restitution order is untimely under *Weeks*. And though the prosecution did not submit the restitution information before sentencing — as it should have under section 18-1.3-603(2)(a) — A.P.R. does not argue any prejudice from that delay. *See People v. Martinez Rubier*, 2024 COA 67, ¶ 49.

¶ 43    Instead, A.P.R. argues that the court did not enter a valid restitution order because it reserved restitution entirely. That's so, he says, because the court said that "restitution may be requested."

¶ 44    But A.P.R. reads that phrase in isolation. Reading that phrase in context with the discussion of restitution at the sentencing hearing, we do not agree that the court reserved restitution entirely. Indeed, at the sentencing hearing, the prosecution represented that a crime victim's application had been filed for "medical bills" and that she didn't know the amount. In that context, and under section 18-1.3-603(1)(b), the court allowed the prosecution additional time to determine "the specific amount of restitution." Given this specific extension to determine the amount of restitution

17

owed, we infer that the court at least implicitly (if not explicitly) determined restitution liability and reserved only the determination of the amount owed. *See Weeks*, ¶¶ 11, 16; *see also Tennyson*, ¶¶ 9-10 (inferring an implicit determination of restitution liability when the court gave the prosecution ninety days to determine the amount of restitution due).

¶ 45 That makes this case unlike *Snow*. In that case, at sentencing, "the prosecution did not request restitution or give any indication that it intended to seek restitution." *Id.* at ¶ 7. Rather, it asked the court to simply reserve restitution. The court agreed and entered an order reserving restitution for sixty days without any distinction between liability and the amount owed. *Id.* Under those circumstances — when the court "deferred the issue of restitution in its entirety" — the supreme court concluded that the sentence was illegal. *Id.* at ¶¶ 2, 22-23.

¶ 46 We therefore reject A.P.R.'s contention that the restitution order was not valid under section 18-1.3-603(1)(b).

## D.  Sufficiency of the Evidence

¶ 47    A.P.R. next challenges the sufficiency of the evidence to prove "the amount payable" to the crime victim compensation board (CVCB).[8]

¶ 48    Crime victims may seek compensation from the CVCB for losses caused by criminal conduct, including medical expenses. *See* §§ 24-4.1-102(1), -108(1), -109(1)(a), C.R.S. 2025.  When a CVCB pays a victim compensation claim, it is a "[v]ictim" for purposes of the restitution statute.  § 18-1.3-602(4)(a)(IV), C.R.S. 2025.  Therefore, "[i]f a CVCB awards compensation to a victim or other qualifying person, the CVCB is eligible to seek and obtain restitution from a defendant in [a] criminal proceeding." *People v. Martinez-Chavez*, 2020 COA 39, ¶ 13.

¶ 49    "The prosecution must prove by a preponderance of the evidence that the defendant's conduct proximately caused the victim's loss and the amount of that loss." *People v. Fregosi*, 2024 COA 6, ¶ 44.  For CVCB claims, however, the restitution statute

---

[8] A.P.R. does not argue that the evidence was insufficient to show that his conduct proximately caused the victim's injuries. He challenges only the sufficiency of the evidence to prove the amount of restitution owed.

creates a rebuttable presumption that the amount paid by the CVCB is a direct result of the defendant's criminal conduct. *See* § 18-1.3-603(10)(a). The rebuttable presumption shifts the burden to the defendant to present evidence to show that the amount paid was not the direct result of their criminal conduct. *People v. Henry*, 2018 COA 48M, ¶ 19.

¶ 50 To trigger the rebuttable presumption, however, the prosecution must establish the amount of assistance provided. *Martinez-Chavez*, ¶ 20. The restitution statute prescribes two ways of establishing this amount: (1) "[a] list of the amount of money paid to each provider"; or (2) "[i]f the identity or location of a provider would pose a threat to the safety or welfare of the victim, summary data reflecting what total payments were made for" by category. § 18-1.3-603(10)(b)(I), (II)(A)-(E).

¶ 51 But the prosecution need not rely on the statutory presumption to establish the amount of restitution; rather, it can also rely on "other means." § 18-1.3-603(2)(a); *see also Fregosi*, ¶ 47 (rejecting the defendant's sufficiency challenge to the restitution order, by noting, in relevant part, that the record showed the prosecution "did not rely solely on the CVCB summaries").

¶ 52     A.P.R. argues that the prosecution failed to comply with the statutory criteria to establish the rebuttable presumption.  But the prosecution didn't rely on the statutory presumption to establish the amount of restitution owed.  Instead, it presented direct testimony from the crime victim compensation program manager, who testified independently about the victim's claim.  She confirmed that the CVCB reviews the police report, the itemized bills showing the dates of service, and the services provided.  The program director also explained that the CVCB would not pay for expenses that were not directly related to A.P.R.'s criminal conduct and that it does not pay for evidence gathering, including sexual assault nurse examinations.  And she confirmed that the process was followed in this case to determine that the victim's medical expenses were proximately caused by A.P.R. and were statutorily eligible expenses.  *See Fregosi*, ¶¶ 46-49 (rejecting the defendant's sufficiency challenge because the record provided sufficient evidence to uphold the restitution order without relying solely on the CVCB summaries).

¶ 53     Viewing the evidence in the light most favorable to the prosecution, we conclude that it was sufficient to prove by a

preponderance of the evidence the amount of restitution owed to the CVCB.

## E. Document Disclosure

¶ 54     A.P.R. also asserts — with no citation to any legal authority — that the district court violated his constitutional right to due process because it imposed restitution "without supporting documentation or disclosure."

¶ 55     Although a CVCB's records relating to the claimed amount of restitution are confidential, § 24-4.1-107.5(2), C.R.S. 2025, a defendant may seek information in the CVCB's records by first requesting the district court to conduct an in camera review of the records, § 24-4.1-107.5(3); *see People v. Hernandez*, 2019 COA 111, ¶¶ 16-17.

¶ 56     A.P.R. does not allege that he requested an in camera review and, if he did, how the court erred by denying his request.  Beyond his failure to seek CVCB records, A.P.R. does not dispute that he received sufficient notice of the prosecution's intent to seek restitution, the basis of its claim, and an opportunity to contest it.  Thus, due process was satisfied.  *See People v. Perez*, 2020 COA 83, ¶ 49 (due process is satisfied, in the restitution context, when the

defendant receives notice of the factual basis for the restitution order and an opportunity to contest that basis), *overruled in part on other grounds by, Weeks*, ¶ 47 n.16, *and cert. granted, judgment vacated on other grounds, and case remanded*, (Colo. No. 20SC559, Dec. 6, 2021) (unpublished order).

## VI. Disposition

¶ 57 We affirm the judgment and the restitution order.

JUDGE HARRIS and JUDGE MOULTRIE concur.